IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RONALD ARROWOOD,
  Petitioner,

v.         Case No.  5:06cv236/RS/MD

WALTER A. MCNEIL,[1]
  Respondent.

_____

ORDER and
REPORT AND RECOMMENDATION

  Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed a response, submitting relevant portions of the state court record.  (Doc. 11).  Although given an opportunity to reply, petitioner has not done so.  (See Docs. 12, 14).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

BACKGROUND AND PROCEDURAL HISTORY

  Petitioner was charged in the Circuit Court of Bay County, Florida, Case Number 00-917, with driving under the influence (DUI), committing manslaughter and

_____

[1] Walter A. McNeil succeeded James R. McDonough as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d)(1).

failing to render aid (Count I), two counts of DUI with serious bodily injury (Counts II and III), and one count of DUI with damage to person (Count IV).  (Doc. 11, Ex. J).[2] At trial, the State presented evidence that on March 31, 2000 petitioner, while under the influence of alcoholic beverages or a controlled substance, drove his Jeep Cherokee up and over the back of a Nissan, killing one passenger (an 18-year old male), seriously injuring two others, and injuring a fourth.  Petitioner then fled the scene.  On August 30, 2001 petitioner was convicted upon jury verdict of all counts as charged, and sentenced to a term of life imprisonment on Count I, two consecutive five-year terms of imprisonment on Counts II and III, and time served on Count IV.  (*Id.*).  Petitioner appealed, raising three claims of trial court error.  (Ex. O).[3] While the appeal was pending, petitioner filed a motion to correct sentencing error under Rule 3.800(b)(2) of the Florida Rules of Criminal Procedure.  (Ex. K).  The motion was denied.  (Ex. N).  The Florida First District Court of Appeal ("First DCA") affirmed petitioner's convictions, but remanded for resentencing based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  *Arrowood v. State*, 843 So.2d 940 (Fla. Dist. Ct. App. 2003).  The mandate issued May 21, 2003. (Ex. S).

A resentencing hearing was held on July 21, 2003.  (Ex. T).  Petitioner was resentenced to 30 years of imprisonment on Count I; a consecutive 5-year sentence on Count II; and a 5-year  sentence on Count III to run consecutive to Count II.  (Ex. T, pp. 476-78).  The resentencing is reflected in the Judgment and Sentence (Ex. U)

---

[2]Hereafter all references to exhibits will be to those attached to Doc. 11 unless otherwise noted.

[3]Petitioner claimed that the trial court committed reversible error by: (1) granting the State's motion in limine concerning evidence of marijuana in the decedent's body and evidence of failure of any of the passengers to use seatbelts, (2) overruling defense counsel's objection that the prosecutor misstated the law in closing argument, and (3) by scoring victim injury points which caused his Criminal Punishment Code Scoresheet sentence to be increased beyond the statutory maximum for his primary offense and by sentencing him, pursuant to the scoresheet, to a life sentence contrary to the decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  (Ex. O; *see also Arrowood v. State*, 843 So.2d 940, 941 (Fla. Dist. Ct. App. 2003))

and the Amended Judgment and Sentence (Ex. V).[4]  Petitioner appealed the resentencing.  (Ex. W).  The First DCA affirmed without written opinion on May 7, 2004.  *Arrowood v. State*, 873 So.2d 1226 (Fla. Dist. Ct. App. 2004) (Table).  The mandate issued May 25, 2004.  (Ex. Z).

On April 18, 2005 petitioner filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. AA, pp. 1-17).  The trial court denied relief.  (Ex. BB).  The First DCA affirmed the denial order without written opinion on September 7, 2005.  *Arrowood v. State*, 913 So.2d 600 (Fla. Dist. Ct. App. 2005) (Table) (*see* Ex. FF).  Petitioner's motion for rehearing was denied on October 18, 2005.  *Arrowood v. State*, 2005 Fla. App. LEXIS 17726 (Fla. Dist Ct. App. 2005); *see also* www.1dca.org/, Case Number 1D05-3308.  The mandate issued November 3, 2005.  (Ex. FF).

On March 5, 2004 petitioner filed a petition for writ of habeas corpus in the First DCA, alleging ineffective assistance of appellate counsel.  (Ex. GG).  The First DCA denied relief on January 17, 2006.  *Arrowood v. State*, 923 So.2d 528 (Fla. Dist. Ct. App. 2006).  Petitioner's motion for rehearing was denied on March 14, 2006.  (*Id.*).

On April 14, 2006 petitioner filed a petition for writ of habeas corpus in the trial court to declare Florida Statute § 316.193 unconstitutional.  (Ex. II).  The trial court construed the petition as a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a), and denied relief on April 21, 2006.  (*Id*).  The First DCA affirmed the denial order without written opinion on October 17, 2006.  *Arrowood v. State*, 940 So.2d 1126 (Fla. Dist. Ct. App. 2006) (Table) (copy of mandate at Ex. KK).

On May 2, 2006 petitioner filed a motion to correct illegal sentence under Rule 3.800(a).  (Ex. LL, pp. 1-11).  The trial court denied relief on June 7, 2006.  (*Id.*, p. 12).  The First DCA affirmed the denial order without written opinion on October 17, 2006.

---

[4]The Amended Judgment and Sentence (Ex. V) corrected the scrivener's error in the resentencing Judgment and Sentence (Ex. U). Specifically, the sentence on Count III was erroneously designated as 30 years consecutive to Count I. The Amended Judgment and Sentence corrected the sentence on Count III to five years consecutive to Count II, which is the disposition ordered at resentencing.

*Arrowood v. State*, 940 So.2d 1126 (Fla. Dist. Ct. App. 2006) (Table) (copy of mandate at Ex. OO).

On August 8, 2006 petitioner filed another motion to correct illegal sentence under Rule 3.800(a).  (Ex. PP, pp. 1-36).  The trial court denied relief on August 23, 2006.  (*Id.*, pp. 37-38).  The First DCA affirmed the denial order without written opinion on April 20, 2007.  *Arrowood v. State*, 955 So.2d 568 (Fla. Dist. Ct. App. 2007) (Table).  The mandate issued May 16, 2007.  *See* www.1dca.org/, Case Number 1D06-5509.

Petitioner filed the instant federal habeas petition on November 28, 2006. (Doc. 1).


## DISCUSSION

<u>Standard of Review</u>

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[5]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

---

[5]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  *Williams*, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from

Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g. Miller-EI*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti v. Quarterman*, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); *Jones*, 469 F.3d 1216 (same).  The writ will not

issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## Exhaustion and Procedural Default

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[6] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the

---

[6]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7, 103 S.Ct. at 278 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  *Anderson*, 459 U.S. at 7, 103 S.Ct. at 278 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  459 U.S. at 7 and n. 3, 103 S.Ct. at 278 and n. 3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, *supra*.  The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[7]  The Supreme Court explained, "[i]f a habeas petitioner wishes

---

[7]The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 115 S.Ct. at 888.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*  This language, while not part of the Court's holding, provides an instructive and useful rule of thumb.  With regard to this statement, the Eleventh Circuit stated in *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  *McNair* [*v. Campbell*], 315 F. Supp. 2d at 1184 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

*Id.*, 416 F.3d at 1302-03 (citations omitted).[8]

---

[8]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on

The Eleventh Circuit, prior to *Duncan*, had broadly interpreted the "fair presentation" requirement.[9]  However, after *Duncan*, the Eleventh Circuit has taken a more restrictive approach.  For example, in *Zeigler v. Crosby*, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause. *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and

---

state law for his arguments.  *Id*.

[9]*See, e.g., Watson v. Dugger*, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court misapplied state law when it refused to give petitioner's requested jury instruction and thereby allowed the jury to convict without necessary showing of criminal intent, and argued in federal court that this was a due process violation); *Mattox v. Dugger*, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position); *Hutchins v. Wainwright*, 715 F.2d 512, 518-19 (11th Cir. 1983) (petitioner exhausted Sixth Amendment confrontation clause claim in state court by raising hearsay objections, even though petitioner never raised Sixth Amendment claim in state court).

rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L.Ed.2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d at576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  *Tower v. Phillips, supra.*

To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

## Petitioner's Grounds for Relief

**Ground 1.** **"Multipliciou [sic] Circumstance[s] Of Defense Counsel's Deficiencies Rendered Prejudicial Effect Which Abrogated Arrowood's Righ[t] To Sixth And Fourteenth Amendments' Constitutional Guarantees."**

In this ground for relief, petitioner asserts two instances of ineffective assistance of counsel. First he contends counsel failed to "provide argumentative grounds against" the State's motion in limine to prohibit reference to or evidence of a controlled substance (marijuana) found in the blood of the deceased driver Jeffrey Barnthouse, and reference to or evidence of the victims' failure to wear seatbelts. Second, he contends counsel failed to "properly object and argue either perjured testimony and/or violation of discovery (Brady)" with regard to the testimony of witnesses Jack Sparks and Jamal Byers. (Doc. 1, pp. 4, 4A-4D). Respondent concedes that petitioner exhausted this ineffective assistance claim by raising it in his Rule 3.850 motion. (Doc. 11, p. 11).

### A.     Clearly Established Federal law

In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d

674 (1984).   "The purpose of ineffectiveness review is not to grade counsel's performance."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance:  "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.  *Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.

*Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails

to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

### B.    Federal Review of State Court Decision

The Rule 3.850 court denied relief on both aspects of petitioner's ineffectiveness claim as follows: "Defendant has failed to demonstrate error on the part of counsel and/or prejudice suffered by Defendant sufficient to satisfy *Strickland v. Washington*, 466 U.S. 668, 687 (1984), in any of the allegations raised under Ground A." (Ex. BB, p. 139). The court attached to its order a portion of the deposition of Jamal Byers (*id.*, pp. 140-59), petitioner's Judicial Acts To Be Reviewed (*id.*, pp. 160-62) and portions of the trial transcript (*id.*, 164-267).

The State's motion in limine is found in the record. The motion attached two cases (one from the First DCA) clearly supporting the State's position on the marijuana and seatbelt issues. (*Id.*, pp. 78-88). The trial court granted the motion. (*Id.*, p. 147). Defense counsel objected (Ex. D, pp. 7-8), preserving the issue for appellate review. (Ex. BB, p. 160). Petitioner raised the issue on direct appeal (arguing that the trial court committed reversible error in granting the motion) without success. This ineffectiveness claim reflects nothing more than petitioner's dissatisfaction with the trial court's ruling, and his attempt to blame defense counsel. Petitioner has made no showing whatsoever that a reasonably competent attorney would have obtained any different ruling from the trial court. The articles concerning marijuana attached to petitioner's Rule 3.850 motion (which petitioner apparently believes should have been included in counsel's argument) provide no relevant legal basis for counsel to have opposed the motion. Petitioner is reminded that the trial court's ruling was reviewed on direct appeal after full briefing, and the appellate court "f[ound] no error." *Arrowood v. State*, 843 So.2d 940, 941 (Fla. Dist. Ct. App. 2003). Because petitioner has not established deficient performance and

the requisite prejudice, the state court's denial of relief on this aspect of petitioner's ineffectiveness claim was neither contrary to, nor involved an unreasonable application of, clearly established Federal law.

As to petitioner's remaining contention, petitioner asserts that witnesses Dr. Jack Sparks and Jamal Byers changed their testimony the day of trial "without advanced notice to defense counsel." Petitioner contends this amounted to a *Brady* violation by the State, and faults defense counsel for failing to move for mistrial on that basis.

In order establish that the State had violated *Brady*,[10] defense counsel would have to have shown that: (1) the prosecution possessed evidence, including impeachment evidence, favorable to the defense; (2) the defense did not possess the evidence nor could have obtained it with reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the trial outcome would have been different. *United States v. Arnold*, 117 F.3d 1308, 1315 (11th Cir. 1997); *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). In the instant case, there was no conceivable basis under *Brady* or its progeny for defense counsel to have objected or moved for mistrial on account of the purported changes in testimony. First and foremost, Dr. Sparks and Mr. Byers were defense witnesses, not prosecution witnesses. Petitioner does not indicate in his petition what the alleged changes in their testimony were, although they apparently were not favorable to the defense (unlike the exculpatory nature of *Brady* material).[11] Further,

---

[10] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

[11] In his Rule 3.850 motion petitioner attached Dr. Sparks' report, thereby implying that his testimony was somehow in conflict with his report. (Ex. AA, pp. 7, 30-47). Petitioner assumes that the State was aware of the change, and argues that the State was therefore obligated to make defense counsel aware of it. However, this does not remotely suggest a *Brady* violation. "*Brady* and its progeny refer to <u>exculpatory</u> evidence requested by an accused that is suppressed by the prosecution." *Demps v. Wainwright*, 805 F.2d 1426, 1432 (11th Cir. 1986) (emphasis added).

As to Mr. Byers, petitioner's Rule 3.850 motion alleged not that Mr. Byers changed his testimony, but that at a pre-trial hearing defense counsel inadvertently misstated Mr. Byers' statement to police concerning whether the victim driver had been backing out at the time petitioner hit his vehicle. This misstatement by counsel does not remotely suggest that a *Brady* violation had occurred. Moreover, apparently the respondent in this case has combed Byers' trial testimony in an

nothing in petitioner's allegations or the state court record remotely suggests that the State was involved in misconduct that resulted in the changed testimony, or that the State suppressed information that the defense could not have obtained with reasonable diligence. Therefore, there was no arguable basis for counsel to have objected or moved for mistrial on the basis of *Brady*. Counsel is not ineffective for failing to preserve or argue a meritless claim. *See Brownlee v. Haley,* 306 F.3d 1043, 1066-67 (11th Cir. 2002) (counsel was not ineffective for failing to raise non-meritorious issue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue). The state court reasonably applied *Strickland* when it denied relief on this claim.

Ground 2.     "Weight of the Sufficiency Of The Evidence Was So Defici[e]nt
That No Adjudication Of Guilt Could Have Been Concluded."

In this ground for relief, petitioner challenges the evidence used to convict him, arguing that it was incomplete and inconsistent. (Doc. 1, pp. 4E-F). Respondent asserts the claim is procedurally defaulted. The undersigned agrees.

Petitioner presented the same claim to the state court in Ground B of his Rule 3.850 motion. (Ex. AA, pp. 9-10). The state court denied relief, stating, "Grounds B, C, and D are grounds which should or could have been raised on direct appeal and thus, are procedurally barred." (Ex. BB, p. 139). The appellate court affirmed the denial order without written opinion. (Ex. FF). The state court relied on the procedural bar as an independent basis for its decision. The procedural bar was adequate to support the judgment, because it is firmly established and a regularly followed state practice in cases such as petitioner's. *LeCroy v. Secretary, Florida Dep't of Corrections*, 421 F.3d 1237, 1260 (11th Cir. 2005) ("As this Court has concluded, if . . . the claim could have been raised [on direct appeal], but was not,

---

attempt to discern any possible changes. Respondent points out that Byers' trial testimony seems to show that Byers somehow changed his testimony as to whether petitioner's headlights were on or off at the time of the crash. (Doc. 11, p. 20 (citing Ex. H, pp. 458-87)). Defense counsel perceived an inconsistency during his direct examination of this witness, but after a bench conference decided not to pursue impeachment on the issue. (Ex. H. pp. 473-75). Again, this does not remotely suggest that there was a *Brady* violation.

it would be barred from any state collateral review, and likewise barred from federal review.") (alternation in original) (internal quotations marks omitted); *see also Bell v. State*, 965 So.2d 48, 60 (Fla. 2007) (finding claim procedurally barred as a post-conviction claim because it could have been raised on direct appeal); *Teffeteller v. State*, 734 So.2d 1009, 1016 (Fla. 1999) (holding that substantive claims raised by post-conviction relief movant were procedurally barred because they could have been raised on direct appeal; *Koon v. Dugger*, 619 So.2d 246, 247 (Fla. 1993) (holding that claims which either were or could have been raised on direct appeal are procedurally barred from review in a Rule 3.850 motion); *Smith v. State*, 445 So.2d 323, 325 (Fla. 1983) (holding that, "[i]ssues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). Therefore, this court should consider the claim procedurally defaulted. Petitioner has made none of the requisite showings to excuse the default. This default bars federal habeas review of this claim.

> **Ground 3.**   **"The Trial Court Reversibly Erred In Granting The State's Motion In Limine, Thereby Precluding Appellant From Presenting Evidence Which Supported His Defense That The Crash Was Unavoidable On His Part Due To Factors Over Which He Had No Control, Including Fault On The Part Of the Deceased Nissan Driver Which Contributed To His Death And To The Injuries To His Passengers."**

Petitioner contends the trial court "reversibly erred" when it granted the State's motion in limine to prohibit evidence of a controlled substance (marijuana) found in the blood of the deceased driver Jeffrey Barnthouse, and evidence of the victims' failure to wear seatbelts. Petitioner argues that the evidence was relevant under the Florida Evidence Code, because the Florida Supreme Court has interpreted the DUI statutes under which he was charged as containing a causation element, and the trial court's ruling prevented him from presenting mitigating evidence of causation attributable to the driver of the other vehicle and to the passengers in that vehicle. (Doc. 1, pp. 4H-4l) (discussing *Magaw v. State*, 537 So.2d 564 (Fla. 1989); *Hubbard v. State*, 751 So.2d 552 (Fla. 1999)). Petitioner concludes that "[b]ecause it cannot be said beyond a reasonable doubt that the trial court's

error did not contribute to the jury's verdict, a new trial is required. *State v. DiGuilio*, 491 So.2d 1129, 1135 (Fla. 1986)."  (Doc. 1, p. 4K).

Federal habeas relief is available to correct only constitutional injury.  28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); *Barclay v. Florida*, 463 U.S. 939, 958-659, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1981); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983).  Questions of state law and procedure "rarely raise issues of federal constitutional significance.  [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  *Tejada v. Dugger*, 941 F.2d 1551 (11th Cir. 1991) (quoting *Carrizales, supra*).  "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence."  *Alderman v. Zant*,  22 F.3d 1541, 1555 (11th Cir. 1994) (citing *Lisenba v. California*, 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941); *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir. 1983)).

Here, petitioner does not claim that the trial court's ruling deprived him of his constitutional rights, rendered his trial fundamentally unfair, or violated any other right under federal law.  He cites exclusively to state statutes and state cases, and his substantive arguments address only Florida law.  The claim presented in Ground 3 involves purely a matter of state law and does not arguably constitute a federal constitutional claim that is cognizable in a federal habeas proceeding.  Therefore, federal habeas relief is unavailable.

### Ground 4.    "The Trial Court Erred In Overruling Defense Counsel's Objection That The Prosecutor Was Misstating The Law To The Prejudice Of Appellant."

Petitioner contends the trial court reversibly erred by allowing the prosecutor to "misstate the law and argue to the jury things not included in the relevant jury

instructions." (Doc. 1, pp. 4L-4M).  Specifically, petitioner contends that in closing argument, the prosecutor told the jurors they would be instructed that the State did not have to prove the defendant was the "sole, approximate cause" of the death of Jeffrey Barnthouse, and that "any deviation of care on the defendant's part in his operation of the Cherokee involving that crash is sufficient."  Petitioner argues that this was a misstatement of Florida law, and that the trial court's overruling of defense counsel's objection on the grounds that it was merely argument prejudiced his case "because the prosecutor's misstatement of the law favored the state's position, and because the misstatement was likely perceived by the jury as having been sanctioned by the court."  Consequently, petitioner asserts, "when the court later read the jury instructions, making no mention of 'sole approximate cause' or 'deviation of care,' there can be no doubt that the jurors were confused as to which "law" they should follow." (*Id.*, p. 4N).  Petitioner argues that the error was compounded by the court's incorrect and misleading instruction on DUI with serious injury.  Petitioner concludes that "[b]ecause it cannot be said beyond a reasonable doubt that the court's errors did not contribute to the verdict, a new trial is required." (*Id.*, p. 4Q) (citing *State v. DiGuilio*, 491 So.2d 1129, 1135 (Fla. 1986)).

As with Ground 3, petitioner does not claim that the trial court's ruling "so infused the trial with unfairness as to deny due process of law," *Lisenba v. People of State of California*, 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941), or that it violated any other rights under the Constitution or federal law.  He cites exclusively to state statutes and state cases, and his substantive arguments address only Florida law.  As to the court's allegedly erroneous instruction, "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle*, 502 U.S. at 71-72, 112 S.Ct. at 475, 482.  The claim presented in Ground 4 involves purely a matter of state law and does not arguably constitute a claim that is cognizable under federal habeas.  Therefore, federal habeas relief is unavailable.

**Ground 5.** <u>**"The Trial Court Reversibly Erred When On Remand For Resentencing It Denied Appellant's Request For A Continuance, Thereby Depriving Appellant Of Due Process And The Opportunity To Prepare And Present Mitigation For The Court's Consideration Prior To Imposing Sentence."**</u>

After petitioner's case was remanded to the trial court for resentencing, the trail court scheduled a resentencing hearing. At the hearing petitioner, represented by counsel, moved for a two-week continuance on grounds that he needed time to prepare a case in mitigation of his sentence. The trial court denied the requested continuance, but delayed the hearing for 4 hours to enable petitioner to contact witnesses and collect materials from his jail cell. After hearing the evidence and argument from both sides, the trial court resentenced petitioner.

Petitioner contends that the trial court's denial of his requested continuance deprived him of due process (including his right to sufficient notice and an opportunity to prepare and present evidence in mitigation of his sentence) and the right to assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution. (Doc. 1, p. 4S). This Ground for relief is taken verbatim from petitioner's appeal of the amended judgment and sentences after resentencing. The First DCA affirmed without written opinion.[12]

"The decision of whether to grant a continuance is reserved to the sound discretion of the trial court." *Van Poyck v. Florida Dep't of Corrections*, 290 F.3d 1318, 1326 (11th Cir. 2002); *Alderman v. Zant*, 22 F.3d 1541, 1558 (11th Cir. 1994) ("Trial courts are afforded broad discretion in determining whether a continuance

---

[12]Respondent concedes that "[t]his ground is lifted verbatim from the argument on the sole issue presented by appellate counsel in the appeal following resentencing." (Doc. 11, p. 33). Respondent asserts, however, that this claim is procedurally defaulted "because 'due process' is not a talisman giving petitioner the key to unfettered argument based on the United States Constitution in the abstract." (Doc. 11, p. 33). He goes on to argue that "[i]n terms of the substantive issue presented in the resentencing appeal, only state law issues are presented, no federal rights or questions are to be seen. Respondents thus assert procedural default under *Duncan v. Henry, supra*." (*Id.*, p. 34).

Since it is undisputed that petitioner presented this claim to the state court and the state court did not impose a procedural bar, it is puzzling that respondent would assert a procedural default defense based on petitioner's failure to apprise the state court of the federal nature of his claim, since the claims are identical. The more appropriate inquiry is whether this ground for relief can be liberally construed as asserting the deprivation of a federal constitutional right. The court need not decide the issue, because even assuming to petitioner's benefit that the claim presented to this and the state court asserts the denial of his due process rights under the United States Constitution, petitioner is not entitled to federal habeas relief because giving the state appellate court's decision the proper deference, its rejection of this claim was not unreasonable.

should be granted."); *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983); *United States v. Bowe*, 221 F.3d 1183, 1189 (11th Cir. 2000); *Gorby v. State*, 630 So.2d 544, 546 (Fla. 1993).  Furthermore, "to establish that a denial of a continuance was reversible error, a defendant must show that the denial caused "'specific substantial prejudice.'" *Van Poyck*, at 1326 (quoting *United States v. Verderame*, 51 F.3d 249, 251 (11th Cir. 1995)); *see also Fennie v. State*, 648 So.2d 95, 97-98 (Fla. 1994).  "There is no particular mechanistic device for determining whether the denial of a continuance results in a violation of due process." *Alderman v. Zant*, at 1558 (citing *Unger v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849-50, 11 L.Ed.2d 921 (1964)).  "The answer must be derived from the circumstances of the particular case, especially the reasons presented to the trial judge at the time the request is denied." *Id.*

Turning to the facts of this case, petitioner was originally sentenced to life in prison based on Criminal Punishment Code Scoresheet points totaling 376.4 points. Eighteen of those points resulted from the trial judge finding that the DUI damage to person count constituted moderate victim injury worthy of 18 points.  The assessment of the 18 points became crucial because it caused petitioner's total points to exceed 363 points, thereby subjecting petitioner to the imposition of a life sentence.  *Arrowood State*, 843 So.2d 940, 941-42 (Fla. Dist. Ct. App. 2003).  On appeal, the First DCA held that the jury's findings of DUI manslaughter and DUI serious bodily injuries supported the imposition of the death and severe victim injury points; however, the computation of points on the DUI damage to person count by the trial court and resulting life sentence violated the rule announced in *Apprendi, supra. Arrowood*, at 942 ("Because the jury only found that there was damage to the person and there was no finding as to the severity of the damage, and because the 18 points at issue are pivotal in whether appellant's total points exceed 363 points and therefore allow for a sentence beyond the statutory maximum, we conclude that appellant is entitled to relief under *Apprendi*.").  The appellate court, affirming on all other issues, reversed petitioner' life sentence and remanded for resentencing.  *Id.* The appellate court's opinion issued April 2, 2003.  The mandate issued May 22, 2003.  (Ex. S).

Petitioner was notified of the mandate on May 22, 2003.  (Ex. T, p. 455).  The notification explained that the State's motion for rehearing had been denied by the First DCA, that he would go back for resentencing, and that the State had a certain amount of time in which to accomplish the resentencing.  The notice did not indicate the date of a resentencing hearing.  (*Id.*).  On July 9, 2003 the State filed a motion to transport petitioner to a resentencing hearing set for July 21, 2003.  (Ex. X, p. 1 ¶ 1; *see also* Ex. AA, docket sheet).  A notice of hearing was filed on July 14, 2003.  (*Id.*).

On July 21, 2003, at the start of the resentencing hearing, petitioner's appointed counsel advised the court that petitioner had just informed him that he wanted a continuance so that he could present mitigating evidence.  (Ex. T, p. 426). Counsel requested a continuance of "at least two weeks," (*id.*), indicating that petitioner wanted to present "mitigating evidence going to factors which have occurred subsequent to the entry of the original sentence," such as a modification of the FHP procedures that were used in his case, and some matters regarding his responsibility that were litigated in the case in chief but which petitioner believed were important for the court to have before it prior to resentencing him. (*Id.*, pp. 426-27).  The court inquired why that "investigation" had not been done earlier.

The State interjected, stating its objection to a continuance because the deceased victim's mother had flown in to Bay County from out of state for the hearing, (*id.*, pp. 428, 455), adding: "We are here simply on a, basically a scoresheet issue was what it was sent back on, we're not here to relitigate the case.  I believe at the time of trial Mr. Arrowood, he did speak at sentencing, he certainly could speak today to the court."  (*Id.*, p. 428).  At that point, the court stated that it was going to deny petitioner's request for a continuance.

Defense counsel advised the court that as counsel for petitioner he should reply to the court's query.  Counsel explained that it had been his assumption until he spoke with petitioner in person earlier that morning, that they were there for "simply a legal issue" regarding the mandate from the DCA:  to give the court an opportunity to review the mandate and review the legal issues, to have the new sentencing guidelines before the court, and to have the court issue its new judgment and sentence.  (*Id.*, p. 429).  Counsel told the court that he and petitioner had only

corresponded once, and that they had not really had an opportunity to go into these things, adding that counsel "would accept full responsibility for that."  Counsel explained that petitioner had now indicated he wanted to be heard on these other matters and had suggested that they present witnesses.  (*Id.*).  When asked to describe the mitigating evidence petitioner desired to present, defense counsel responded:

> [M]ost of the factors that he's mentioned to me, I've explained to him that I believe that those were factors which had been resolved as I said to you earlier in the case.  He wanted the Court to hear matters such as co-responsibility and those sorts of things which I have indicated to him are in the record and have been litigated and you had a reaction to those before and put it on the record.
>
> Even with that explanation he has said to me that he wishes you to have that mitigating, what he's considering mitigating evidence, in front of you before you issue your sentence.  So he believes that there are factors of mitigation that you are not aware of.

(*Id.*, p. 430).  The court responded:

> Well, since I've already heard them once and have a recollection, and you can bring those back to my attention, I can see no reason at this point to continue the sentencing.  So I'm going to deny your request for a continuance.  However, I will be glad to hear from petitioner as to whatever he wishes to say prior to sentencing.

(*Id.*, p. 430).  After it was determined that the mathematical computations on the new sentencing scoresheet were correct, (*id.*, pp. 432-33), the court asked if there was any legal reason why sentence should not be pronounced.  Defense counsel responded there was nothing beyond the motion for continuance to allow petitioner the opportunity to compile what he was representing would be mitigating circumstances, and that petitioner was reserving this motion on which the court had ruled.  (*Id.*, p. 433).

The State called Peggy Barnthouse who testified about the ongoing medical problems of three of the boys who were injured in the accident, and about her struggle to get through each day without her son Jeff.  (*Id.*, pp. 433-36).  The defense called petitioner, who testified that he had asked for an opportunity to give to the court "some matters in mitigation" of his sentence."  (*Id.*, p. 437).  When asked to describe the mitigating evidence he would present, petitioner stated that he couldn't

say because he had not had enough time to think about it or talk to his attorney. (*Id.*, pp. 437-46). When petitioner was urged to give some idea of the witnesses and the type of evidence he wanted to present, petitioner said that he would call Bill Lewis, the assistant State Attorney, and trooper Brice from the Florida Highway Patrol ("FHP"). (*Id.*, pp. 438). Petitioner said that Mr. Lewis knew for a fact that petitioner really did not intentionally leave the scene of the accident, but it was up to Mr. Lewis "Whether he's man enough to come out and say what he knows for a fact." (*Id.*, p. 443). Petitioner said that Trooper Brice could talk about a newspaper article petitioner saw concerning how the FHP in south Florida had changed its procedure for investigating DUI cases. When the court asked how that would affect his resentencing, petitioner responded:

> Yes, the Highway Patrol made a mistake in my case and, but once they obligated themselves or once they convicted themselves as to where they were headed, they weren't going to change their minds even when the evidence started coming in where the headlights were not, were on, in fact at the time of the accident, they had been knocked out during the accident, they twisted everything around and then, once they convicted themselves on this thing they didn't want to change even though the evidence started coming in showing things happened otherwise. Like the fact that, Jeffrey Barnthouse did make a U-turn and did back into my path, all of that was, it was covered up and was twisted around for trial. . . .
>  . . . .
>
> – and the inches on the miles an hour, I'm not sure if I was, I say I wasn't speeding, they say I was, I, you know, if I did actually go over the speed limit bit [sic], you know, that was by accident, it wasn't intentional and I know I did not drive away –

(*Id.*, p. 445).

The court explained to petitioner that the purpose of the proceeding was to resentence him and not "to relitigate his guilt or innocence." (*Id.*, pp. 445-46). The court added that the only thing petitioner was requesting was a continuance to gather information about attacking whether he was guilty or not, which was not appropriate, and that that was why it denied petitioner's request for a continuance. (*Id.*, p. 446). The judge then announced that she had to give up the courtroom to another judge, but that they could reconvene later if petitioner had something in his

jail cell that was "appropriate for sentencing." (*Id.*, pp. 446-47). The court again discussed with petitioner who his potential witnesses would be in support of mitigation.   After it was determined that only petitioner had testified at his sentencing, the court stated:

> So I don't know what other witnesses you might have, Mr. Arrowood since you didn't have anyone the first time.  And you can't tell me who they might be.  Is that correct?  Other than what you've already said?  I'm talking about you as a person, that's basically what you talk about at sentencing.

(*Id.*, p. 449). Eventually, petitioner indicated that he could probably have his brother and mother talk.  (*Id.*, p. 451).  After a four-hour recess, defense called petitioner's mother, who testified by telephone concerning petitioner's "reliability and his nature." (*Id.*, pp. 456-59).  Petitioner's brother also testified by telephone concerning the same factors.  (*Id.*, pp. 461-64).  Defense counsel followed up these remarks by submitting to the court certifications of petitioner's standing in the International Brotherhood of Electrical Workers, after which, petitioner took the stand and his testimony resumed.  After indicating that he still had not had sufficient time to discuss with his attorney his proposed testimony concerning mitigation, the court held a brief recess for petitioner to talk with defense counsel.  When petitioner's testimony resumed, petitioner testified that he knew he had an obligation to pay restitution for the enormous medical bills incurred for the treatment of the young men who were injured in the accident, adding that as a union electrician he made good money and thought the judge should consider that in terms of his ability to pay and assist the families, and how it was affected by his imprisonment.  (*Id.*, p. 474). The court proceeded to impose sentence, saying that it could see no reason to deviate from the recommended, or "the maximum sentence," as petitioner still accepted no responsibility for the case and did not seem to have changed in the last two years.  (*Id.*, pp. 477-78).

Under these circumstances, the First DCA was not unreasonable in rejecting petitioner's due process claim, because that court could conclude that the trial court did not abuse its discretion in denying the motion for a continuance.  The only factors petitioner identified as wanting to explore and present to the court were those going to his guilt, including the alleged co-responsibility of the deceased

victim/driver.  The court found the vast majority of petitioner's proposed evidence to be either inappropriate for consideration at resentencing, or redundant of that already in the record.  Therefore, petitioner had not shown that a continuance would provide any new evidence relevant to resentencing.  As to that evidence that was appropriate, the court allowed a brief delay for petitioner to collect and present that evidence (his testimony and that of his family members).  Based on the foregoing, the state appellate court could have reasonably concluded that the trial court did not abuse its discretion in denying the continuance.  Therefore, the state court's rejection of this claim was reasonable.

**Ground 6.**   **"Trial Court Committed Error Based On Sentencing Defendant Past The Statutory Maximum For A Second Degree Felony Pursuant To Fla. Stat. 775.082 And 316.193(3)(c)3.a. In Violation Of Defendant's Fifth, Sixth And Fourteenth Amendments To The United States Constitution And Article One, Section Nine Of The Florida's Constitution."**

Petitioner contends that his 30-year sentence for DUI manslaughter is illegal because it was imposed based on a fact--that at the time he failed to provide information and render aid he knew or should have known that a crash had occurred--not charged in the second amended information or determined by the jury. (Doc. 1, pp. 4X-4XX).  Respondent concedes petitioner exhausted this ground by raising in his May 2006 Rule 3.800(a) motion.  He contends, however, that petitioner is not entitled to habeas relief because the state court's denial of the claim was neither contrary to, nor an objectively unreasonable application of, clearly established federal law.

**A.    Clearly Established Federal Law**

In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490, 120 S.Ct. at 2362-63.

**B.    Federal Review of State Court Decision**

Petitioner claims that the trial court's imposition of a 30-year sentence for DUI manslaughter, failing to furnish information and render aid, violated his right to have any factors resulting in imposition of sentence beyond the statutory maximum presented to and determined by a jury. Specifically, he argues that DUI manslaughter is a second degree felony subject to a statutory maximum of 15 years' imprisonment unless two additional elements are proven: that at the time of the crash the person knew or should have known that the crash occurred, and that the person failed to give information and render aid. Those elements raise the offense to a first degree felony subject to a statutory maximum of 30 years' imprisonment. According to petitioner, the second amended information did not specifically charge that he knew or should have known that the crash occurred; therefore, that fact was never determined by the jury, and he could not be sentenced beyond the legal statutory maximum of 15 years for a second degree felony. (Doc. 1, pp. 4X-4XX).

Petitioner raised this claim in his May 2006 Rule 3.800(a) motion filed after resentencing. (Ex. LL, pp. 2-6). The state court denied relief, stating: "Defendant's allegations are without merit. The attached Information and Sentence refute Defendant's allegations. Defendant's sentence is a legal sentence." (*Id.*, p. 12). The denial order was affirmed on appeal without written opinion.

> The second amended information charged petitioner in Count I as follows:
>
> Ronald Arrowood, on or about the 31st day of March, 2000, in the County and State aforesaid, did drive or was in actual physical control of a vehicle while under the influence of alcoholic beverages, while affected to the extent that his normal faculties were impaired, or had a blood alcohol level of .08 or more grams of alcohol per 100 milliliters of blood, or had a breath alcohol level of .08 or more grams of alcohol per 210 liters of breath, and by reason of such vehicle operation caused or contributed to the death of Jeffrey Barnthouse, a human being, and did fail to give information and render aid as required by Section 316.062, Florida Statutes, in violation of Section 316.193(3)(c)8b, Florida Statutes.

(Ex. LL, p. 26). At trial the State called eyewitness Joe Taylor who testified that he saw petitioner's Jeep Cherokee "r[u]n up on top" of the black Nissan. On impact, both vehicles spun around. One person from the Nissan was ejected from the car. The Cherokee then made a U-turn and drove off. Taylor followed the Cherokee. Eventually, the Cherokee traveled onto a street that ended in a dead-end. It ran a

stop sign where the street dead ended, veered to the left of a driveway and ran up into a "rock garden."  The driver, who was identified as petitioner, got out of the vehicle, fell to the ground, got up, ran to a nearby restaurant parking lot, and ducked behind a Jeep Wrangler.  It was there that he was apprehended by law enforcement. (Ex. D, pp. 42-56).  At the conclusion of the evidence the court instructed the jury, in relevant part, as follows:

> [THE COURT:] Before you can find the defendant guilty of D.U.I. manslaughter, leaving the scene, the state must prove the following six elements beyond a reasonable doubt.  Now, the first three elements are the definition of driving under the influence, manslaughter. . . .
>
> . . . To make it DUI manslaughter, leaving the scene the state must prove the following three additional elements.  Number four, at the time the defendant knew or should have known that he was involved in the traffic accident.  Number five, the defendant knew or should have known of the injury to Jeffrey Barnthouse.  Number six, the defendant failed to stop at the scene of the accident or as close to the scene of the accident as possible and remain there until he had given identifying information to the injured person and to any police officer investigating the accident, or the defendant willfully failed to render reasonable assistance to the injured person if such treatment appeared to be necessary or was requested by the injured person.
>
> If the state proves that the defendant willfully failed to give any part of the identifying information or willfully failed to give reasonable assistance the state satisfies this element of the offense.
>
> Now, identifying information means name, address, vehicle registration number and, if available and requested, the exhibition of the defendant's license or permit to drive.
>
> Reasonable assistance means carrying or making arrangements to carry the injured person to a physician or hospital for medical treatment.
>
> "Willfully" means intentionally and purposely.
>
> Normal faculties include, but are not limited to, the ability to see, hear, walk, talk, judge distances, drive an automobile, make judgments, act in emergencies and, in general, to normally perform the many mental and physical acts of our daily lives.

(Ex. I, pp. 680-82).  The jury found petitioner "GUILTY as charged of Driving Under the  Influence Manslaughter - Leaving the Scene."  (Ex. J, p. 19; ex. I, p. 699).

As the state court found, the record conclusively establishes that the additional elements of fleeing the scene and failing to render aid were submitted to, and found by the jury.  Petitioner was convicted of driving under the influence, committing manslaughter and failing to render aid, a first degree felony.  Fla. Stat. § 316.193(3)(c)3.b. (2000).  The statutory maximum penalty for that offense is a term of imprisonment not exceeding thirty years.   Fla. Stat. § 775.082(3)(b)(2000). Petitioner was sentenced to thirty years in prison, which is not beyond the prescribed statutory maximum.  No enhancement was ordered by the court, and no facts were found which were not already found in the jury verdict for this offense. The state court's denial of relief on petitioner's *Apprendi* claim was neither contrary to, nor involved an unreasonable application of, clearly established Federal law.

Ground 7.   **"Trial Court Committed Error Based On Sentencing Defendant To Consecutive Sentences, When The Offense Occur[r]ed In A One Single Episode In Violation Of Defendant's Rights Under Amendments Five, Six, And Fourteen Of The United States Constitution And Article One, Section Nine Of The Florida Constitution."**

Petitioner contends that because his convictions arose from a single driving episode, the state court's imposition of consecutive, as opposed to concurrent, sentences violated his rights under the Double Jeopardy Clause. (Doc. 1, pp. 4Y-4Z). Respondent asserts that this claim is procedurally defaulted because although petitioner raised an identical claim in his May 2006 Rule 3.800(a) motion, it was not presented as a federal claim.  Respondent alternatively argues that the instant claim presents purely an issue of state sentencing law; therefore it forms no basis for federal habeas relief.  Respondent further argues that the state court's adjudication of this claim was neither contrary to, nor involved an objectively unreasonable application of, clearly established federal law. (Doc. 11, pp. 39-41). The undersigned finds that this ground for relief presents a federal constitutional claim arising under the Fifth Amendment's Double Jeopardy Clause which is cognizable on federal habeas, and that the claim is not procedurally defaulted.

A.   **Clearly Established Federal Law**

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'"

*Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 306, 104 S.Ct. 1805, 1812, 80 L.Ed.2d 311 (1984).   This guarantee is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).  The Double Jeopardy Clause embodies three separate guarantees: "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices*, 466 U.S. at 307-08, 104 S.Ct. at 1812 (citation and footnote omitted).  "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983); *Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980) ("The Double Jeopardy Clause at the very least precludes . . . courts from imposing consecutive sentences unless authorized by [the legislature] to do so."); *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1980) (stating, "the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed.  Where [the legislature] intended . . . to impose multiple punishments, imposition of such sentence does not violate the Constitution."); *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977) (noting "[w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.").  Although this court will decide under federal law whether a double jeopardy violation has occurred, it must accept Florida courts' construction of that State's own statutes. *Id.*, 459 U.S. at 368, 103 S.Ct. at 679.

### B.    Federal Review of State Court Decision

Petitioner raised this identical claim in his Rule 3.800(a) motion filed in May of 2006, arguing that his consecutive sentences violated double jeopardy principles. (Ex. LL, pp. 6-8).  The trial court denied relief on the merits as detailed above.  (*Id.*, p. 12).  Petitioner appealed the denial of relief, without success.  (Ex. MM; Ex. OO).

For the reasons that follow, the undersigned concludes that because the Florida legislature intended multiple sentences to be imposed for the causing of simultaneous death or injury of different victims, any question of violation of double jeopardy is foreclosed. *Missouri v. Hunter*, 459 U.S. at 366, 103 S.Ct. at 678.

The issue of a double jeopardy violation turns on the question of whether the Florida legislature intended the DUI statute to treat a DUI driver's injury to multiple victims as one act or multiple acts for purposes of punishment. Florida courts have construed the DUI statute as permitting multiple punishments arising from a single violation of the statute where injury results to several persons. *Melbourne v. State*, 679 So.2d 759, 765 (Fla. 1996) (explaining that "[t]he DUI driver may sustain multiple convictions because the violation causes injury to each victim."); *State v. Lamoureux*, 660 So.2d 1063 (Fla. Dist. Ct. App. 1995) (holding that multiple convictions and sentences for DUI with serious bodily injury are permissible for injuries to multiple victims arising from a single driving episode), *approved by*, 679 So.2d 1184 (Fla. 1996); *see also Bautista v. State*, 863 So.2d 1180, 1185-87 (Fla. 2003) (holding that legislative intent behind DUI manslaughter statute is to allow each death caused in a DUI crash to be charged and punished as a separate offense). This court is bound to accept the Florida courts' construction of that State's statutes.

Here, petitioner's violation of the DUI statute caused the death of one person (Jeffrey Barnthouse), serious personal injury of a second (Todd Tomazewski), serious personal injury of a third (Andrew McCloskey), and personal injury of a fourth (Tyan Woodle). Under the DUI statute, although there was only one driving episode, petitioner's simultaneous injury of four different victims constitutes four separate "acts" and thus four separate offenses for which multiple sentences may be imposed.[13] His conviction of one count of DUI manslaughter, two counts of DUI causing serious bodily injury, and one count of DUI causing injury does not violate double jeopardy, nor do his consecutive sentences, because multiple punishments is what the Florida legislature intended. *See Missouri v. Hunter*, 459 U.S. at 366; *see also, e.g., United States v. Davis*, 656 F.2d 153 (5th Cir. Unit B Sept. 1981) (rejecting

---

[13]Indeed, proof of each offense is independent of proof of the other.

double jeopardy claim of defendant who was convicted of two counts of violating same statute for his simultaneous possession with intent to distribute marijuana and quaaludes; Congress intended to permit trial courts to penalize possession of "each" controlled substance; defendant's simultaneous possession of different controlled substances constituted two acts and thus two separate offenses for which consecutive sentences may be imposed); *Bogan v. McNeil*, 2008 WL 215705 (M.D. Fla. Jan. 24, 2008) (holding that double jeopardy principles did not preclude Florida habeas petitioner's consecutive five-year sentences for two counts of driving under the influence resulting in serious bodily injury).  Petitioner has failed to establish that the state court's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established Federal law.

> **Ground 8.**   "Did The Trial Court Error [sic] By Failing To Attach Records/Documents That Conclusively Refuted Appellant's Claims?"

Petitioner challenges the Rule 3.800 court's denial of relief on his *Apprendi* claim (discussed in Ground 6 *supra*), arguing that the portions of the record attached to the order did not conclusively rebut his claim.  (Doc. 1, pp. 4AA-4CC). Petitioner raised this claim in the Rule 3.800(a) proceeding on a motion for rehearing.  (Ex. LL, pp. 28-31).  The Rule 3.800 court denied relief, and the appellate court affirmed without written opinion.  (*Id.*, p. 47; Ex. OO).  Respondent contends this claim is procedurally defaulted because although petitioner raised the same claim in his Rule 3.800(a) motion, it was not presented as a federal claim. Respondent alternatively argues that the instant claim presents purely an issue of state procedural law; therefore it forms no basis for federal habeas relief.  (Doc. 11, pp. 41-43).

It is well established in the Eleventh Circuit that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state post-conviction proceedings.  This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself.  *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) ("while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for

habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam) (denying habeas relief on claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion; holding that such a claim "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief"). Because this claim does not represent a constitutional challenge to petitioner's confinement, it does not constitute grounds for habeas relief.

Ground 9.   **"Pursuant To The United States Supreme Court's Decision In** **_Apprendi v. New Jersey_**__, 120 S.Ct. 2348 (2000) Can The State__ **Only Charge One Prong/Element Of A Statute And Bring Back A** **Verdict Of Guilty On The Highest Degree Felony."**

This claim is a reiteration of the *Apprendi* claim raised in Ground 6, *supra*. Ground 6 was a verbatim recitation of the issue as presented to the trial court in petitioner's May 2006 Rule 3.800(a) motion, and this Ground 9 is a verbatim recitation of the issue as presented to the appellate court on appeal of the trial court's order denying relief.   (Ex. MM, pp. 8-10).   For the reasons previously discussed, the undersigned concludes that the state court's denial of relief on this claim was neither contrary to, nor involved an unreasonable application of, clearly established Federal law.  *See* discussion *supra* pp. 28-31.

Ground 10.   **"Florida's Statute 316.193 Is Unconstitutional Based On The Fact** **That It Violates Petitioner's Right Not To testify Against Hisself** **[sic] In Violation Of Article One Section Nine Of The Florida** **Constition [sic] And Amendment Five And Fourteen Of The** **United State's [sic] Constitution.  "Righ [sic] To Due Process."**

Petitioner contends that the Florida statute making it illegal for a DUI driver to flee the scene of a DUI crash and fail to give information and render aid violated his constitutional rights because it compelled him to choose between being a witness against himself and facing "enhancement" of his offense to a first degree felony.  (Doc. 1, pp. 4FF-4JJ).  Petitioner argues that his "choice not [to] stop and give information was no more th[a]n his choice to remain silent under the Constitution and no penalty should be imposed for such action."  (*Id.*, p. 4HH). Respondent concedes that petitioner presented this claim to the state courts, but contends that he is not entitled to federal habeas relief.  (Doc. 11, pp. 45-47).

## A.    Clearly Established Federal Law

In *California v. Byers*, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971), the United States Supreme Court held that the constitutional privilege against compulsory self-incrimination was not infringed by a state statute which required a motorist involved in an accident to stop at the scene and give his name and address. A plurality found the risk of incrimination too insubstantial to implicate the Fifth Amendment, *id.*, at 427-28, 91 S.Ct. at 1537-38, and noted that the statute "was not intended to facilitate criminal convictions but to promote the satisfaction of civil liabilities," *id.*, at 430, 91 S.Ct. at 1539, was "'directed at the public at large,'" *id.* (quoting *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965)), and required disclosure of no inherently illegal activity. *See also Pennsylvania v. Muniz*, 496 U.S. 582, , 601-02, 110 S.Ct. 2638, 2650, 110 L.Ed.2d 528 (1990) (holding that responses of suspect in driving under the influence case to police questions regarding his name, address, height, weight, eye color, date of birth, and current age, were not required to be suppressed because suspect had not been given *Miranda* warning; even though the questions were asked while the suspect was in custody, they were of a routine booking nature and were not intended to elicit information for investigatory purposes).

## B.    Federal Review of State Court Decision

Petitioner raised this claim in a state habeas corpus petition, which was construed by the trial court as a motion to correct illegal sentence under Rule 3.800. (Ex. II, pp. 1-9). The motion was denied as follows:

> Defendant alleges that Florida Statute Section 316.193(3)(c)(3)(b)(II) is unconstitutional because the enhancement for failing to give information and render aid as required by s. 316.062 violates Defendant's right to not be a witness against himself and right to remain silent. This Court finds that Defendant's allegations are without merit. Florida Statute Section 316.193(3)(c)(3)(b)(II) does not violate Defendant's right to remain silent or require Defendant to be a witness against himself. Defendant's sentence is a legal sentence.

(*Id.*, p. 9). The appellate court affirmed the denial order without written opinion. (Ex. KK).

Section 316.193 provides, *inter alia*, that any person who drives under the influence; who operates a vehicle; and who, by reason of such operation, causes the

death of any human being commits DUI manslaughter, and commits a felony of the first degree if: "(I) At the time of the crash, the person knew, or should have known, that the crash occurred; and (II) The person failed to give information and render aid as required by s. 316.062."  Fla. Stat. 316.193(3)(c)3.b. (2000).

Section 316.062, Florida Statutes (2000), provides:

316.062 Duty to give information and render aid.  (1) The driver of any vehicle involved in a crash resulting in injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person <u>shall give his or her name, address, and the registration number of the vehicle he or she is driving, and shall upon request and if available exhibit his or her license or permit to drive,</u> to any person injured in such crash or to the driver or occupant of or person attending any vehicle or other property damaged in the crash and shall give such information and, upon request, exhibit such license or permit to any police officer at the scene of the crash or who is investigating the crash and shall render to any person injured in the crash reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary, or if such carrying is requested by the injured person.

(2) In the event none of the persons specified are in condition to receive the information to which they otherwise would be entitled under subsection (1), and no police officer is present, the driver of any vehicle involved in such crash, after fulfilling all other requirements of s. 316.027 and subsection (1), insofar as possible on his or her part to be performed, shall forthwith report the crash to the nearest office of a duly authorized police authority and submit thereto the information specified in subsection (1).

(3) <u>The statutory duty of a person to make a report or give information to a law enforcement officer making a written report relating to a crash shall not be construed as extending to information which would violate the privilege of such person against self-incrimination.</u>

(4) A violation of this section is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318.

*Id.* (emphasis added).  Contrary to petitioner's allegations, the statute does not require him to "furnish law enforcement officer with a written statement as to his actions in a crash," doc. 1, p. 4GG, nor does it require him to "make a [sic] incriminating statement," *id.*, p. 4HH.  The statute requires him to provide only his

name, address and the registration number of the vehicle he is driving, and to exhibit his license upon request.  Under the Supreme Court's holding in *California v. Byers, supra*, the statutes at issue do not infringe upon the constitutional privilege against compulsory self-incrimination.  The state court's denial of relief on this claim was neither contrary to, nor involved an unreasonable application of, clearly established Federal law.

> **Ground X    "Trial Court Committed Fundamental Error, Based On Convicting Defendant Of A Crime He Was Not Charged In The Charging Information In Violation Of Defendant's Constitutional Right To Due Process Fourteenth Amendment To The United States Constitution."**

Petitioner contends that his conviction of DUI Manslaughter, failure to provide information and render aid, violates due process because the second amended information did not specifically charge him with having known (or should have known) that he was involved in the crash, and having known (or should have known) of the injury to Jeffrey Barnthouse.  (Doc. 1, pp. 4LL-4SS).  Respondent contends the claim is procedurally defaulted and, alternatively, without merit.  The claim is procedurally defaulted.

Petitioner raised this claim in his August 2006 Rule 3.800(a) motion.  (Ex. PP, p. 2-8).  The trial court denied relief, finding that the claim was procedurally barred and, alternatively, without merit.  As to the procedural bar, the court explained:

> Although Defendant captions his motion as a Motion to Correct Illegal Sentence under Fla. R. Crim. P. 3.800(a), which may be filed at any time, Defendant's claims challenge his underlying conviction, not merely his sentence and, therefore, are not cognizable in a Rule 3.800 motion.  *See State v. Williams*, 854 So.2d 215, 217 (Fla. 1st DCA 2003).  These issues must be raised in a Rule 3.850 Motion for Postconviction Relief.  However, as Defendant has already filed a previous 3.850 motion, and as more than two years have passed since the First DCA affirmed Defendant's conviction and sentence after his resentencing, such a motion would be both successive and time-barred. Additionally, the issues Defendant raises could have been raised in a direct appeal proceeding and are procedurally barred.  *See Rodriguez v. State*, 919 So.2d 1252, 1267 (Fla. 2005).  The Court could deny the motion for these reasons alone.

(Ex. PP, p. 37).  The court went on to find, as an alternative holding, that the claims were without merit.  (*Id.*, pp. 37-38).  The appellate court affirmed the denial order without written opinion. *Arrowood v. State*, 955 So.2d 568 (Fla. Dist. Ct. App. 2007) (Table).

The state court relied on procedural bars as independent bases for its decision.  The procedural bars were adequate to support the judgment, because they are firmly established and regularly followed state practices in cases such as petitioner's.  *See* Fla. R. Crim. P. 3.850; *State v. Williams*, *supra*, (holding that defendant's claim was, in reality, a challenge to his convictions rather than his sentence; therefore, it was not cognizable in a Rule 3.800(a) proceeding; further, because the motion was filed more than two years after defendant's conviction became final, the claim was time barred even if construed as having been asserted under Rule 3.850); *Moore v. State*, 820 So.2d 199, 205 (Fla. 2002) (holding that a successive Rule 3.850 motion can be denied as an abuse of process where the defendant failed to raise the issue in his previous motion for post-conviction relief without reason); *Franklin v. State*, 923 So.2d 1199, 1199 (Fla. Dist. Ct. App. 2006) (finding that the claims raised in Rule 3.850 motion could have been raised in the defendant's first motion for post-conviction relief, and were, therefore, procedurally barred); *Teffeteller v. State, supra*, (holding that substantive claims raised by post-conviction relief movant were procedurally barred because they could have been raised on direct appeal); *Smith v. State, supra*, (holding that, "[i]ssues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").   Therefore, this court should consider the claim procedurally defaulted.  Petitioner fails to argue and the record fails to show cause and prejudice, or manifest injustice to excuse the default.  This default bars federal habeas review of this claim.

> **Ground 11.** <u>**"Trial Court Committed Fundamental Error, Based On Sentencing Defendant In Counts Two And Three DUI With Serious Bodily Injury In Violation Of Defendants's Constitutional Rights Against Double Jeopardy, The Fifth And Fourteenth Amendment To The United States Constitution and Art. One Sec. Nine Florida Constitution."**</u>

As his final ground for relief, petitioner contends his separate convictions on Counts II and III for DUI causing serious bodily injury violate double jeopardy principles because they are lesser-included offenses of DUI manslaughter. (Doc. 1, pp. 4SS-4VV). Petitioner argues that either his convictions on Counts II and III should be vacated, or at a minimum, his sentences run concurrent to Count I. Respondent asserts that this claim is procedurally defaulted and, alternatively, without merit. (Doc. 11, pp. 53-55).

As with "Ground X" just discussed, petitioner raised this claim in his August 2006 Rule 3.800(a) motion. (Ex. PP, p. 2-8). The trial court denied relief, finding that the claim was procedurally barred and, alternatively, without merit. (*Id.*, pp. 37-38). The appellate court affirmed the denial order without written opinion.

For the reasons set forth above, the undersigned concludes that this claim is procedurally defaulted. *See* discussion and cases cited *supra* pp. 38-39. Petitioner fails to argue and the record fails to show cause and prejudice, or manifest injustice to excuse the default. This default bars federal habeas review of this claim.

## CONCLUSION

A number of petitioner's grounds for relief are procedurally defaulted. Petitioner has made none of the requisite showings to excuse his default. Those claims that were properly exhausted do not warrant federal habeas relief.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Walter A. McNeil has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

That the petition for writ of habeas corpus (doc. 1) challenging the convictions and sentences in *State of Florida v. Ronald Arrowood*, in the Circuit Court of Bay County, Florida, case number 00-917, be DENIED and the clerk be directed to close the file.

At Pensacola, Florida this 25th day of March, 2008.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).